FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MITSUI O.S.K. LINES, LTD., <br><br> Plaintiff, <br><br> v. <br><br> EVANS DELIVERY COMPANY, INC., et al., <br><br> Defendants. | Civ. No. 12-5595 (DRD) <br><br> **O P I N I O N** |
| EVANS DELIVERY COMPANY, INC., et al., <br><br> Plaintiffs, <br><br> v. <br><br> MITSUI O.S.K. LINES, LTD., <br><br> Defendant. | Civ. No. 12-7186 (DRD) |

*Appearances by:*

HILL RIVKINS LLP
By: Anthony J. Pruzinsky, Esq.
    Lauren E. Komsa, Esq.
102 South Broadway

South Amboy, New Jersey 08879

    *Attorneys for Mitsui O.S.K. Lines, Ltd.*

GEORGE W. WRIGHT & ASSOCIATES, LLC
By: George W. Wright, Esq.
    Narinder S. Parmar, Esq.
505 Main Street, Suite 106
Hackensack, New Jersey 07601

    *Attorneys for Defendants in Civ. No. 12-5595. Attorneys for Plaintiffs in Civ. No. 12-7186.*

## DEBEVOISE, Senior District Judge

This matter arises out of multiple international cargo shipments, arranged by Plaintiff Mitsui O.S.K. Lines, Ltd. ("Mitsui"), that were diverted from their intended inland destinations. On June 27, 2012, Mitsui filed a Complaint in New Jersey Superior Court against a host of motor carriers, alleging claims for fraud, violations of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., breach of contract, unjust enrichment, and conversion ("Action 1"). On July 7, 2012, Defendants removed the Action 1 Complaint to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. On September 28, 2012, Defendants filed a Motion to Dismiss the Action 1 Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2). On October 5, 2012, Mitsui filed a Motion to Remand the Action 1 Complaint to New Jersey Superior Court, pursuant to 28 U.S.C. § 1447.

On November 19, 2012, Defendants filed a Complaint in this Court against Mitsui seeking declaratory relief against the claims asserted by Mitsui in the Action 1 Complaint ("Action 2"). On March 13, 2013, Mitsui filed a Motion to Dismiss the Action 2 Complaint.

For the reasons set forth below, Mitsui's Motion to Remand the Action 1 Complaint is GRANTED. Consequently, Defendants' Motion to Dismiss the Action 1 Complaint is DENIED as moot. Mitsui's Motion to Dismiss the Action 2 Complaint is GRANTED.

# I. BACKGROUND

Mitsui is a Japanese vessel operating common carrier that has an office in Edison, New Jersey. Defendants are motor carriers authorized by the Surface Transportation Board to transport goods across the United States. From January 2004 through December 2007, Mitsui utilized Defendants' services to transport cargo shipments from foreign countries to inland destinations in the United States.

In doing so, Mitsui would issue a transportation order ("TPO") to the motor carrier for each shipment of cargo. The TPO states (1) where the cargo is to be picked up; (2) where the cargo is to be delivered; and (3) the amount of money that Mitsui will pay the motor carrier for transporting the cargo to its destination. After delivering a piece of cargo in accordance with a TPO, the motor carrier would issue an invoice to Mitsui for its services. All such invoices in this case were sent to Mitsui's office in Edison, New Jersey. Mitsui would then issue payment on each invoice.

In or around February 2011, Mitsui discovered that Defendants had diverted a large number of cargo shipments from the destinations noted on their respective TPOs, but invoiced Mitsui as if those shipments had been delivered to their intended destinations. According to Mitsui, those shipments were diverted to locations that required Defendants to travel fewer miles than if they had transported the shipments to their intended destinations.

For example, Mitsui alleges that Lightening Transportation, Inc. ("Lightening") picked up cargo at the Portsmouth Marine Terminal, in Norfolk, Virginia, for delivery to Bassett, Virginia—a distance of 236 miles—pursuant to a TPO issued by Mitsui. Instead of taking the cargo to Bassett, Virginia, Lightening transported it to Ridgeway, Virginia—a distance of 230 miles. Consequently, Lightening invoiced Mitsui for six miles that were never traveled.

Defendants allegedly invoiced Mitsui in a similar manner thousands of times for small distances that they never traveled.

## II. DISCUSSION

Mitsui now moves to remand the Action 1 Complaint to New Jersey Superior Court, pursuant to 28 U.S.C. § 1447. In doing so, it argues that (1) Federal question jurisdiction is lacking under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA") and the Carriage of Goods by Sea Act ("COGSA"); and (2) diversity jurisdiction does not provide a basis for removal. Defendants oppose the motion, arguing that (1) all shipments alleged in the Complaint are governed by the ICCTA; (2) removal under the ICCTA was proper under the doctrine of complete preemption; (3) admiralty jurisdiction provides an additional ground for removal; and (4) diversity jurisdiction provides yet another ground for removal.[1]

Mitsui also moves to dismiss the Action 2 Complaint. In doing so, it argues that the Action 2 Complaint (1) fails to set forth any likelihood of future injury and therefore fails to satisfy Article III standing; (2) sets forth claims that are wholly redundant of those set forth by Action 1 Defendants in support of their Motion to Dismiss the Action 1 Complaint; and (3) violates Federal Rule of Civil Procedure 13(a). Action 2 Plaintiffs oppose the motion, contending that (1) the Action 2 Complaint makes clear that they are likely to suffer future economic injury arising out of the claims asserted in the Action 1 Complaint; (2) the issue of whether the claims set forth in the Action 2 Complaint are wholly redundant of those in the Action 1 Defendants' Motion to Dismiss the Action 1 Complaint is premature in light of Mitsui's Motion to Remand the Action 1 Complaint; (3) if the Action 1 Complaint is remanded to New

---

[1] Defendants also move to dismiss the Action 1 Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6) and 12(b)(2). However, the Court cannot consider this motion in light of granting Mitsui's Motion to Remand the Action 1 Complaint.

Jersey Superior Court, the Colorado River doctrine does not require dismissal of the Action 2 Complaint; and (4) the Brillhart doctrine does not apply to the Action 2 Complaint.

**A.      Mitsui's Motion to Remand**

In removing the Action 1 Complaint to this Court, Action 1 Defendants asserted three bases of jurisdiction: (1) federal question jurisdiction under the Interstate Commerce Commission Termination Act of 1995 ("ICCTA)"; (2) federal question jurisdiction under the Carriage of Goods by Sea Act ("COGSA"); and (3) diversity jurisdiction.  Mitsui seeks to remand the Action 1 Complaint to New Jersey Superior Court, contending that this Court neither has removal jurisdiction under the ICCTA or COGSA, nor diversity jurisdiction.

"Only state-court actions that originally could have been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  "Absent diversity of citizenship, federal-question jurisdiction is required." Id.  "The presence or absence of federal-question jurisdiction is governed by the 'well-pleaded complaint rule,' which provides that federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint." Id.  "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." Id.

   *i.      Removal Jurisdiction under the ICCTA*

Mitsui contends that the Court lacks removal jurisdiction under the ICCTA because the Complaint pleads only state law claims and there is no complete preemption of state law claims under the statute.  "[A] case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption." Caterpillar, 482 U.S. at 393 (citation omitted) (emphasis in original); see also Ry. Labor Execs. Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858

F.2d 936, 942 (3d Cir. 1988) ("State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.").

However, when "the pre-emptive force of a statute is so extraordinary[,] . . . it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar, 482 U.S. at 393 (quotation omitted). "Once an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Id. (citation omitted).

"The difference between preemption and complete preemption is important." Dukes v. U.S. Healthcare, Inc., 57 F.3d 350, 355 (3d Cir. 1995). "When the doctrine of complete preemption does not apply, but the plaintiff's state claim is arguably preempted . . . the district court, being without removal jurisdiction, cannot resolve the dispute regarding preemption." Id. "It lacks power to do anything other than remand to the state court where the preemption issue can be addressed and resolved." Id. Put another way, "[s]tate-law claims that are subject to express preemption are displaced and thus subject to dismissal." In re U.S. Healthcare, Inc., 193 F.3d 151, 160 (3d Cir. 1999) (citation omitted). In contrast, "[c]laims that are completely preempted are necessarily federal in character, and thus are converted into federal claims." Id. (quotation omitted).

The "[c]omplete preemption doctrine applies where the federal statute at issue provides the exclusive cause of action for the claim asserted and also sets forth procedures and remedies governing that cause of action." Bd. of Chosen Freeholders of Cnty. of Burlington v. Tombs, 215 Fed. App'x 80, 81 (3d Cir. 2006) (citing Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8

(2003)); see also Fayard v. Northeast Vehicle Servs., LLC, 533 F.3d 42, 46 (1st Cir. 2008) ("The Supreme Court decisions finding complete preemption share a common denominator: exclusive federal regulation of the subject matter of the asserted state claim . . . coupled with a federal cause of action for wrongs of the same type.").

The United States began its great experiment in regulating the transportation industry (and eventually others) with the passage, in 1887, of the Interstate Commerce Act, ch. 104, 24 Stat. 379 (1887). Under that act, the Interstate Commerce Commission ("ICC") began by regulating the nation's railroads; the Motor Carrier Act of 1935, 49 Stat. 543, added the trucking business to the ICC's responsibilities. Three years later, Congress provided for regulation of the airline business in the Civil Aeronautics Act of 1938, 52 Stat. 973. "This regime lasted approximately four decades, but by the time President Carter took office, the movement to deregulate these and other sectors was picking up steam." S.C. Johnson & Son, Inc. v. Transp. Corp. of America, Inc., 697 F.3d 544, 548 (7th Cir. 2012) (citation omitted).

"Efforts to deregulate the airline industry found a warm welcome in the Carter White House. President Carter appointed Alfred Kahn, a well-known supporter of deregulation, to head the Civil Aeronautics Board (CAB) in 1977, and Kahn went right to work." Id. "Under Kahn, the CAB lifted restrictions on charter companies, allowed airlines much greater flexibility in setting fares." Id. (Citation omitted). Congress took a more comprehensive approach in legislation beginning with the Air Cargo Deregulation Act, Pub.L. No. 95–163, 91 Stat. 1278, and followed up with the Airline Deregulation Act of 1978, Pub.L. No. 95–504, 92 Stat. 1705.

Trucking deregulation followed in 1980, beginning with the Motor Carrier Act of 1980. Pub.L. No. 96–296, 94 Stat. 793. "That statute lifted most restrictions on entry, on the goods that truckers could carry, and on routes. It did not, however, eliminate the requirement to file tariffs,

7

nor did it end the power of state regulatory commissions to limit entry and regulate prices." S.C. Johnson, 697 F.3d at 548. Fourteen years later, Congress decided to finish the job by first passing the Federal Aviation Administration Authorization Act of 1994, Pub.L. No. 103–305, 108 Stat. 1569 (Title VI of which addressed "Intrastate Transportation of Property" by both air and motor carriers), and then the Trucking Industry Regulatory Reform Act of 1994, Pub.L. No. 103–311, 108 Stat. 1673. In 1995, Congress dissolved the Interstate Commerce Commission. ICC Termination Act of 1995, Pub.L. No. 104–88, 109 Stat. 803.

While "[t]he ICA contained a number of rate regulation provisions, including a requirement that most road carriers file tariffs defining the prices and terms under which they would transport persons and property [,] . . . [e]nactment of the ICCTA in 1995 largely rolled back this pervasive scheme of federal regulation." Emmert Indus. Corp. v. Artisan Assocs., Inc., 497 F.3d 982, 986 (9th Cir. 2007) (citation omitted). "The new legislation deregulated most sectors of road transport, and relieved most road carriers of having to file tariffs describing their rates in detail." Id. However, "[r]oad carriers still must file tariffs in two specialized categories of transportation: household goods and noncontiguous domestic trade." Id. at 986 n.2.

The ICCTA's jurisdiction over motor carrier transportation is set forth in 49 U.S.C. § 13501. That provision states:

> The Secretary and the Board have jurisdiction, as specified in this part, over transportation by motor carrier and the procurement of that transportation, to the extent that passengers, property, or both, are transported by motor carrier--
>
> **(1)** between a place in--
>
> **(A)** a State and a place in another State;
>
> **(B)** a State and another place in the same State through another State;
>
> **(C)** the United States and a place in a territory or possession of the United States to the extent the transportation is in the United States;

8

> **(D)** the United States and another place in the United States through a foreign country to the extent the transportation is in the United States; or
>
> **(E)** the United States and a place in a foreign country to the extent the transportation is in the United States; and
>
> **(2)** in a reservation under the exclusive jurisdiction of the United States or on a public highway.

To be sure, the Surface Transportation Board ("STB") has the authority to enforce the provisions of the ICCTA. See 49 U.S.C. §§ 14701, 14702. The ICCTA also allows private parties to file a complaint with the STB for violations of the statute, see 49 U.S.C. § 14701(b), as well as a cause of action (1) to enforce an order issued by the STB, see 49 U.S.C. § 14704(a)(1); (2) for injunctive relief for violations of certain ICCTA provisions, id.; (3) "damages sustained . . . as a result of an act or omission of that carrier," in violation of an ICCTA provision, 49 U.S.C. § 14704(a)(2); and (3) "for amounts charged that exceed the applicable rate for transportation or service contained in a [filed] tariff in effect" under the ICCTA, 49 U.S.C. § 14704(b) (referring to tariffs filed under 49 U.S.C. § 13702).

With respect to civil actions for amounts charged in excess of a particular filed tariff rate, the ICCTA's enforcement scheme specifically gives private parties the option to either (1) file a complaint with the STB and subsequently file an action to enforce the STB's order, if necessary; or (2) simply bring a civil action. See 49 U.S.C. § 14704(c)(1), (2). Parties also have the option to bring an action to enforce an order of the STB regarding excessive charges in either federal or state court. See 49 U.S.C. § 14704(d)(1).

Here, the Action 1 Complaint sets forth claims for damages arising out of Action 1 Defendants' (1) invoicing Mitsui for transportation services that were in fact never provided; and (2) invoicing Mitsui for amounts in excess of the transportation services that were actually

9

provided. These claims do not fall within the scope of the ICCTA's enforcement scheme, as it applies to motor carriers. While it allows for a private cause of action against motor carriers for charges in excess of a filed tariff rate, there is no indication on the face of the Action 1 Complaint that Action 1 Defendants invoiced Mitsui on the basis of a filed tariff rate under the ICCTA. And while the statute provides a private cause of action for damages arising out of a motor carrier's act or omission in violation of the ICCTA, Defendants fail to point to, nor is the Court aware of, an ICCTA provision that vindicates the same interests as,[2] much less displaces, Mitsui's state law claims.[3]

Defendants contend that, notwithstanding the ICCTA's enforcement scheme, this Court has original jurisdiction over Mitsui's claims in the Action 1 Complaint pursuant to the Supreme Court's ruling in Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd., 460 U.S. 533 (1983). In Thurston, the Supreme Court held that "[a]s to interstate shipments . . . the parties are held to the

---

[2] The ICCTA makes it unlawful "to present false or misleading information on a document about the actual rate, charge, or allowance to any party to the transaction." 49 U.S.C. § 13708(b). However, that provision "proscribe[s] presentation of a document (such as an invoice) indicating that a customer was charged a certain amount, when in fact the carrier *actually* charged that customer a lesser amount." U1It4Less, Inc. v. Fedex Corp., 896 F. Supp. 2d 275, 294 (S.D.N.Y. 2012) (finding that 49 U.S.C. § 13708(b) does not apply to overcharge claims) (emphasis in original).

[3] Defendants point to the following two provisions under the ICCTA that purportedly indicate Congress's intent to wholly displace any state law claims alleging freight overcharges: (1) the FAAAA statute; and (2) the Carmack Amendment. The FAAAA statute expressly preempts any state "law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). While this provision may serve as the basis for a defense of express federal preemption against Mistui's state law claims, it has no bearing on the issue of complete preemption, which requires an exclusively federal cause of action. The Carmack Amendment also has no bearing on the issue of complete preemption in this case because it applies only to claims for "the actual loss or injury to the property" being transported. 49 U.S.C. § 14706. Mitsui asserts no such claims in the Action 1 Complaint.

responsibilities imposed by federal law, to the exclusion of all other rules of obligation[,]" because "[a] carrier's claim is, of necessity, predicated on the tariff—not an understanding with the shipper." 460 U.S. at 535. Indeed, Thurston was decided at a time when motor carriers were generally required to file tariff rates in accordance with the ICA. Consequently, disputes over interstate motor transportation, at that time, necessarily concerned the laws surrounding those tariff rates—i.e. federal law.

Under the current ICCTA regime, however, only those disputes over interstate motor transportation involving noncontiguous domestic trade or movement of household goods necessarily imply a filed tariff rate under the statute. As previously discussed, there is no indication of a dispute over a filed tariff rate (or of transportation involving noncontiguous domestic trade or household goods) on the face of the Complaint. Thus, Mitsui's claims do not necessarily imply federal law under the logic of Thurston. Accordingly, there is no complete preemption of those claims under the ICCTA, and the statute cannot serve as a basis for removal.

### ii. *Removal Jurisdiction under the COGSA*

By its terms, the COGSA "applies to a carrier engaged in the carriage of goods to or from any port in the United States." 46 U.S.C. § 30702(a); see also Norfolk N. Ry. Co. v. Kirby, 543 U.S. 14, 29 (2004) ("COGSA governs bills of lading for the carriage of goods from the time when the goods are loaded on to the time when they are discharged from the ship." (quotation omitted)). Here, Mitsui's claims are based solely on Action 1 Defendants' inland transportation within the United States and therefore do not fall within the scope of the COGSA.

Action 1 Defendants correctly point out that the COGSA can extend to inland transportation in furtherance of maritime contracts. However, they fail to recognize that the COGSA may only extend to inland transportation if the parties specifically stipulate that it does

11

in a maritime contract. Norfolk, 543 U.S. at 29. There is no indication whatsoever in the Action 1 Complaint that the parties contracted to extend COGSA jurisdiction to Action 1 Defendants' inland transportation. Consequently, the COGSA cannot serve as a basis for removal.

### iii. Diversity Jurisdiction

"Defendants may remove an action on the basis of diversity of citizenship if there is complete diversity between all named plaintiffs and all named defendants, and no defendant is a citizen of the forum State." Lincoln Prop. Co. v. Roche, 546 U.S. 81, 84 (2004). Mitsui, a New Jersey resident, asserts claims against Defendant Bridge Terminal Transport, Inc., also a New Jersey resident. Consequently, complete diversity is destroyed in this case, and Defendants cannot remove Action 1 to this Court on the basis of diversity jurisdiction.

## C. Mitsui's Motion to Dismiss the Action 2 Complaint

### i. Standard of Review

In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted. When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims." In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases: Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544

(2007). The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged." Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Iqbal, 129 S. Ct. at 1949. Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

13

### ii. *Dismissal of the Action 2 Complaint*

The Action 2 Complaint repeats the general allegations set forth by Mitsui in the Action 1 Complaint and proceeds to assert claims for declaratory judgment that (1) the disputed invoices in the Action 1 Complaint are correct and proper; (2) Mitsui failed to satisfy a condition precedent to filing suit under the ICCTA; (3) Mitsui's claims in the Action 1 Complaint are barred by the statute of limitations under the ICCTA; and (4) Mitsui's claims are preempted by the FAAAA.

The Declaratory Judgment Act provides that "any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Act "contemplates that district courts will exercise discretion in determining whether to entertain such actions." State Auto Ins. Cos. v. Summy, 234 F.3d 131, 133 (3d Cir. 2000).

A district court should hesitate to exercise jurisdiction under the Declaratory Judgment Act when there is a parallel proceeding between the same parties in state court that presents the same issues as those in the action for declaratory judgment. See Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 495 (1942) ("Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."). In such circumstances, a district court "should ascertain whether the questions in controversy between the parties to the federal suit, and which are not foreclosed under the applicable substantive law, can better be settled in the proceeding pending in the state

court." Id. "This may entail inquiry into the scope of the pending state court proceeding and the nature of defenses open there." Id.

In Wilton v. Seven Falls Co., the Supreme Court reaffirmed its ruling in Brillhart. 515 U.S. 277, 286-88 (1995). In doing so, it held that "at least where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in gratuitous interference if it permitted the federal declaratory action to proceed." Id. at 277. Indeed, "[i]n the declaratory judgment context, the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. at 288.

Here, Brillhart and Wilton require dismissal of the Action 2 Complaint. Remand of the Action 1 Complaint to New Jersey Superior Court creates a state proceeding that runs parallel to the Action 2 Complaint involving the same parties. Indeed, the factual and legal claims set forth in the Action 2 Complaint exclusively seek declaratory judgment against the claims set forth in the Action 1 Complaint.[4] Furthermore, the New Jersey Superior Court is perfectly capable of determining whether the Action 2 Plaintiffs correctly invoiced Mitsui for their transportation services. The Superior Court is also capable of determining whether the FAAAA preempts Mitsui's state law claims, and, in turn, whether those claims are subject to other federal defenses under the ICCTA, including the failure to comply with notice requirements and statutes of limitations. Consequently, for this Court to resolve the issues in the Action 2 Complaint would amount to a waste of judicial resources and result in outcomes that would either duplicate, or worse, conflict with, those in New Jersey Superior Court. Accordingly, Mitsui's Motion to Dismiss the Action 2 Complaint is granted.

---

[4] If the Court had retained jurisdiction over the Action 1 Complaint, the Action 2 Complaint would have violated Federal Rule of Civil Procedure 12(b) for failure to state affirmative defenses in a responsive pleading or via motion.

## III. CONCLUSION

For the foregoing reasons, Mitsui's Motion to Remand the Action 1 Complaint is GRANTED. Consequently, Action 1 Defendants' Motion to Dismiss the Action 1 Complaint is DENIED as moot. Mitsui's Motion to Dismiss the Action 2 Complaint is GRANTED. The Action 2 Complaint is dismissed with prejudice.

The Court will issue an order implementing this opinion.

 **/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: June 10, 2013